**Nos. 25-3727, 25-7781**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

GAVIN NEWSOM, *in his official capacity as Governor of the State of California*;
STATE OF CALIFORNIA,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, *in his official capacity as President of the United States*;
PETER HEGSETH, *in his official capacity as Secretary of the Department of Defense*; UNITED STATES DEPARTMENT OF DEFENSE,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California

# DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

BRETT A. SHUMATE
*Assistant Attorney General*
ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
ANDREW M. BERNIE
J. KAIN DAY
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*

In June 2025, the President and Secretary of War directed the federalization and deployment of approximately 4,000 National Guard members and 800 Marines to the Los Angeles area in the face of widespread violent protests aimed at impeding federal law enforcement. Less than two months later, all the Marines had left and just 300 Guard members remained; by December, only about 100 remained. The district court then issued an injunction requiring defederalization of those Guard members and return of control to Governor Newsom. Defendants appealed that injunction but, on December 23, the Supreme Court declined to stay an injunction against the deployment of the National Guard in Illinois. *See Illinois v. Trump*, 607 U.S. ----, 2025 WL 3715211 (Dec. 23, 2025). Construing 10 U.S.C. § 12406(3)—which authorizes the President to federalize members of the Guard if he is "unable with the regular forces to execute the laws of the United States"—the Court concluded "that the term 'regular forces' in § 12406(3) likely refers to the regular forces of the United States military," such that the President may not deploy the Guard unless he is unable to execute the laws with the standing military.

Following that decision, Defendants did not oppose the lifting of the partial administrative stay this Court granted on December 12. That stay was lifted, and the challenged federalization and deployment have ended. Following these intervening factual and legal developments, Defendants moved to dismiss their appeals in No. 25-3727, challenging the district court's injunction against the June federalization

and deployment (initial-federalization appeal), and in No. 25-7781, challenging the district court's injunction against its continuation (continued-federalization appeal).

This should have been a simple matter, requiring nothing more than a joint stipulation of dismissal followed by swift dismissal of the appeals—as occurred in the *Illinois* litigation. *Illinois et al. v. Trump*, No. 25-2798, ECF No. 42-1 (7th Cir. Jan. 22, 2026). But Plaintiffs refuse to take yes for an answer. They insist that the Court should instead go forward and decide the initial-federalization appeal (on a ground that Plaintiffs did not even argue in the district court or in their response brief on appeal to this Court) and the continued-federalization appeal (where merits briefing has not even begun). This Court should reject that request and dismiss these appeals—thus ensuring that Plaintiffs are protected by the two injunctions while respecting Defendants' decision not to further challenge them.

1. Initially, the question for purposes of this motion is not, as Plaintiffs appear to suggest, whether the underlying case is moot. *See* Opp. at 1 n.1 (citing supposedly "overlapping considerations between the issues of dismissal and mootness"); *id.* at 4 n.3 (raising prospect of future deployments). Nor is it even whether the appeal is moot—the question on which this Court's order in the initial-federalization appeal invited supplemental briefing. It is simply whether Defendants' wish to dismiss *their own appeals* should be respected.

That distinction matters. In the context of an opposed motion to dismiss a case as moot, a court is being asked to dismiss *a plaintiff's* complaint over its objection, which requires a showing that there is no longer a case or controversy between the parties. *See, e.g.*, *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). By contrast, when an appellant seeks to dismiss its own appeal—thereby forfeiting the right to seek appellate relief from the order it previously appealed—such a motion "is generally granted." 16 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3988 (5th ed.) (collecting cases); *see also Albers v. Eli Lilly & Co.*, 354 F.3d 644, 646 (7th Cir. 2004) (though "not automatic," "[d]oubtless there is a presumption in favor of dismissal").

2. Against this backdrop, none of Plaintiffs' arguments have merit.

a. Plaintiffs' lead argument is that dismissal is inappropriate because Defendants' decision "appears to have been prompted by the Supreme Court's decision in *Illinois*," Opp. at 3, an alleged motivation Plaintiffs characterize as "'acting strategically' to 'manipulate the formation of precedent,'" Opp. at 3 (quoting *In re Nexium Antitrust Litig.*, 778 F.3d 1, 2 (1st Cir. 2015)). This argument fails on multiple levels.

For one, to the extent Defendants chose not to pursue this appeal because of an intervening Supreme Court decision that undercut its legal position, there is nothing wrong with that. *See United States v. Brenner*, 3 F.4th 305, 306 (6th Cir.

2021) (granting government motion to voluntarily dismiss appeal based on intervening adverse Supreme Court decision); *cf. American Auto Manufacturers Association v. Massachusetts Department of Environmental Protection*, 31 F.3d 18, 22–23 (1st Cir. 1994) (granting motion to voluntarily dismiss some claims on appeal over appellee's objection based on adverse decision from different court of appeals). Litigants might choose to continue litigating an appeal notwithstanding a Supreme Court stay decision suggesting that the appeal is unlikely to succeed. But it would be absurd to contend they are required to do so, or that a decision to abandon an appeal at least in part because of guidance from the Supreme Court is suspect and warrants further judicial probing.

Plaintiffs' suggestion that Defendants are trying "to avoid a potentially adverse decision applying *Illinois* within this Circuit," Opp. at 3, also makes no sense as a reason to deny dismissal. The Supreme Court already held in *Illinois* that Defendants were unlikely to succeed on their argument that the federalization and deployment there was authorized by 10 U.S.C. §12406(3), concluding that "the term 'regular forces' in § 12406(3) likely refers to the regular forces of the United States military" such that the President may not deploy the Guard unless he is unable with the standing military to execute the laws.

To be sure, the Supreme Court's analysis was not a final ruling on the merits of that issue. But these appeals are also preliminary injunction appeals. So the

question this Court would address is whether Defendants are likely to succeed in their argument that the federalization and deployment in Los Angeles were authorized by Section 12406(3)—essentially the same question the Supreme Court addressed in a similar posture. If the Court were to answer that question in the negative based on the rationale in *Illinois*, that would not likely generate any meaningful new precedent distinct from *Illinois* itself. This is thus not a case where appellants are seeking "dismissal for the purpose of evading appellate determination of certain questions *in order to frustrate court orders in the continuing litigation*." *United States v. State of Wash., Dep't of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978) (emphasis added).

b. Plaintiffs also state that, as to the initial-federalization appeal, "the parties and the Court have already devoted significant resources to the appeal." Opp. at 3. Of course, that is not true of the continued-federalization appeal. And even as to the initial-federalization appeal, the argument rings hollow. For one, Plaintiffs themselves sought and obtained a second district court injunction requiring defederalization and return of control over the remaining federalized Guard members to Governor Newsom. Even if Plaintiffs are correct that the injunction—and the lifting of the partial administrative stay of that injunction—does not *technically* moot the initial-federalization appeal, *see* No. 25-3727, ECF No. 155.1 (Plaintiffs' Supp. Br.) at 6, it is their litigation choices that have created

the current situation, in which the initial-federalization appeal has no ongoing practical significance.

Furthermore, the parties' previous litigation of the initial-federalization appeal should be given little weight because, as to Section 12406(3), Plaintiffs do not actually want the Court to decide this appeal on the basis of the parties' prior briefing and oral argument. Instead, Plaintiffs want this Court to resolve this appeal solely on the basis of *Illinois*. *See* Supp. Br. at 12 ("On the merits, the *Illinois* decision dictates the outcome of the Section 12406(3) issue presented here."). But Plaintiffs have never, at any prior stage of this litigation, argued that the "regular forces" for purposes of Section 12406(3) includes the military. So regardless of whether the Court dismisses the appeal (as Defendants request) or resolves the appeal and affirms on the basis of *Illinois* (as Plaintiffs request), the parties' previous litigation will be almost entirely irrelevant to the Court's disposition of that appeal.[1] This is plainly not the sort of circumstance that warrants rejecting Defendants' choice to dismiss its own appeal.

c. Plaintiffs point out that Defendants also invoked 10 U.S.C. § 12406(2)—which authorizes the President to deploy the Guard when "there is a

[1] Indeed, were these appeals to continue—which they should not—Defendants would have at least reasonable grounds to argue that Plaintiffs forfeited the arguments on which they now ask this Court to affirm, by never making those arguments in the district court or (in the initial-federalization appeal) in any of its merits briefs on appeal.

rebellion or danger of a rebellion against the authority of the Government of the United States"—and that the Supreme Court's opinion in *Illinois* does not address Section 12406(2). Opp. at 5. This would be an issue of first impression in this Court. Since neither *Illinois* nor this Court have addressed this open question, however, Plaintiffs cannot plausibly contend that Defendants are acting manipulatively in dismissing their own appeals. And for the reasons given above—since merits briefing in the continued-federalization appeal has not even begun—there is certainly no plausible basis for litigating *that* appeal to conclusion on the "danger of rebellion" question over Defendants-appellants' objection.

That leaves the initial-federalization appeal. For the Court to reach out and decide that appeal on this issue now, it would need to: (1) address an important issue largely of first impression in this Court (the meaning of "rebellion" and "danger of rebellion" in Section 12406(2)); (2) address another important issue that was not definitively resolved at the stay stage (the extent of deference owed to the President's determination under that provision), and that has been intensely debated by both the parties and members of this Court; (3) address those issues in a fact-bound context concerning a federalization and deployment that has ended; (4) do so while reviewing an injunction that has been in practical terms superseded by a new injunction enjoining the continuation of that same federalization and deployment; and (5) do all of this and issue what would at least arguably be an advisory opinion

despite Defendants' motion to dismiss their own appeal. Plaintiffs provide no compelling reason for the Court to take such a highly irregular step.

d. Plaintiffs emphasize that proceedings have not ended in the district court and the district court has not yet entered final judgment on Plaintiffs' claim under Section 12406. Opp. at 5. But that simply adds to the absurdity of going forward with these appeals notwithstanding Defendants' motions to dismiss them. If the district court were to grant final judgment to Plaintiffs on that claim, that would presumably moot these appeals, *see, e.g.*, *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 730 (9th Cir. 2017), and Plaintiffs could not appeal a decision in their favor, *see, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 702-03 (2011). If Plaintiffs are suggesting that they will delay further proceedings in the district court in order to obtain a decision from this Court on appeals that Defendants no longer wish to pursue, there is no reason for this Court to enable that.

Nor would a decision from this Court provide useful "guidance" for the district court. Opp. at 1. The district court has stated at every turn in this litigation that it believes the federalization and deployment—and its continuation—was not authorized by Section 12406. To take just the most recent example, when enjoining the continued federalization and deployment, the district court stated that "there was no rebellion, nor was civilian law enforcement unable to respond to the protests and enforce the law." Dist. Ct. Dkt. 176 at 1. Plaintiffs do not need guidance from this

Court to proceed in the district court, whether they intend to move for final judgment or file any other motion.

e. Plaintiffs note that the federal government has in various ways not abandoned its legal arguments. They point out that, in agreeing to lift the partial administrative stay of the district court's December continuing-federalization injunction, Defendants made clear they did so "[w]ithout prejudice to any other arguments defendants may present." No. 25-7781, ECF No. 21.1. But that simply signified that Defendants had not yet decided whether to seek dismissal of that appeal—which they now have. Citing the First Circuit's decision in *In re Nexium Antitrust Litigation*, Plaintiffs note that Defendants "have never disavowed the arguments they made in this appeal, nor pledged not to rely on the same arguments in later litigation." Opp. at 4. But in *Nexium Antitrust Litigation*, the panel's concern was that the defendants had not abandoned their challenge to the relevant order, and appeared to be dropping their interlocutory appeal so they could challenge the order on final judgment before a different and potentially more favorable panel. 778 F.3d at 2. That is obviously not the situation here. And there is no requirement that, in order to obtain dismissal of its own appeal, the federal government must admit that it was wrong or promise not to make the same or similar arguments in hypothetical future cases.

f. Finally, Plaintiffs assert that, if the Court grants Defendants' motion to dismiss, it should vacate its prior stay order. *See Newsom v. Trump*, 141 F.4th 1032 (9th Cir. 2025) (per curiam). Defendants doubt that the circumstances here warrant vacatur. But Defendants do not object to vacatur as part of an order granting dismissal of these appeals if the Court concludes that vacatur is appropriate.

## CONCLUSION

The Court should grant the motions to dismiss these appeals, with the parties to bear their own costs on appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
SHARON SWINGLE
J. KAIN DAY

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*
*andrew.bernie@usdoj.gov*

February 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) and Local Rules 27-1(d) and 32-3 because it contains 2,300 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point font, a proportionally spaced typeface.

*/s/ Andrew M. Bernie*
Andrew M. Bernie